CASE 60—PETITION EQUITY—APRIL 4.

# Hayden and wife vs. Stone and wife.

APPEAL FROM SCOTT CIRCUIT COURT.

1. One who received money for his late ward, a few days after the guardianship had ceased—the ward continuing one of his household, and he still maintaining the practical relation of curator—will not be protected against the claim of the ward for the money, by the statute of limitations,

2. If, in such case, the statute could have been applied, it ought to have been pleaded. Equity could not presume payment, under the circumstances, from the lapse of even twenty years, unless relied on in the defense.

3. Where the domestic services of a female ward are worth as much as her board, nothing should be allowed the guardian on that account. Nor will the law imply a legal liability for board after the ward arrived at the age of twenty-one years.

C. D. CARR, and HUNT & BECK, for appellants.

R. A. BUCKNER and J. F. ROBINSON for appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In the year 1835, Alexander Kirkpatrick died intestate and out of debt, leaving a widow and three infant children, his homestead of about fifty acres of land in Bourbon county, and personal property appraised at $1,355 55, including a female slave Lucy, appraised at $500 ; and, consequently, the other movables amounted to $855 55, of which the widow was entitled to one third as her distributive portion, and her three infant children to the other two thirds, amounting to $670 37, or $223 52⅓ to each of them.

A sale-bill reported the sale of only a portion of the articles which had been appraised. Lucy was not sold, and the amount of the sale of the other appraised articles was $410 80.

The widow became administratrix, and within about two years afterwards intermarried with Oliver Stone, who lived with her on the said land for some time, and afterwards rented it out for several years, until he sold it in 1851, subject to the ratification of the infant heirs on their attainment, respectively, to twenty-one years of age. He also retained and used Lucy until she had borne several children, and then sold her for $462 50. He also had, until after the institution of this suit, the use of the descendants of Lucy, all of whom he sold *pendente lite*, for $4,500.

All of the three infant children lived with their mother and step-father until after they had attained their majority ; and Mary, the oldest, continued with them until her marriage with her co-appellant in June, 1858, when she was nearly twenty-eight years old.

On the last day of November, 1858 (neither her mother as administratrix, nor her step-father, who had been appointed in the year 1848 for herself and her infant brother Alexander, and sister Anne, having ever made any settlements or reported to them or to the court any account), Mary and her husband brought this suit in equity against them for a settlement and payment. The appellees, in their answer, claimed for the said Oliver all the slaves as his own through his wife, to whom, as they allege, Lucy had been given after her first husband's death—and the appellee Oliver denied that he had ever

received any portion of the appellant Mary's money for her land—pleaded the statute of limitations as to the slaves, and charged over $2,000 for appellant Mary's board.

Three days after the institution of this suit, the appellee Stone had a settlement with Alexander and Anne Kirkpatrick, and gave to each of them his note for $1,160 on a compromise. Nevertheless, although the appellaht Mary had received but very little from her guardian, and probably not more than either of his other wards except in a longer continued board, the circuit court, barring her claim for her land-money by the statute of limitations, and allowing her guardian nearly $2,000 for her board, and thus bringing her in debt, dismissed the petition, whereby her whole estate was absorbed and she left in debt.

This extraordinary result cannot be ratified by this court on the facts exhibited in the record, tested by judicial scrutiny and the touchstone of the laws of the land.

In revising the judgment, we shall not forget the ungraceful and suspicious attitude in which the appellee, Oliver, has presented himself in such a case before the court, requiring an unfavorable construction of his defense, so far as it may not be clearly vindicated by facts and sanctioned by law. And, under this guard, we shall, without the presentation of minute argument or thorough analysis, state only a general synopsis of the conclusions on which we shall reverse the judgment, so as to enable the circuit court, without difficulty, to render a final decree which may stand approved by law and justice.

1. The facts, carefully collated and scrutinized, conduce strongly to prove that the appellee, Oliver, received the appellant, Mary's, land-money in trust to keep for her use, and has continued to withhold it and use it as his own. And, concurrently with the circuit court, we adjudge that he did so receive and wrongfully appropriate that fund. But we cannot, with that court, adjudge that the appellee, Oliver, is shielded against reclamation by the statute of limitations. He received the money virtually as guardian, only a few days after his technical guardianship had expired, his ward continuing, as before, one of his household, and he standing in *loco parentis*, and still

maintaining also the practical relation of curator. The lapse of five years, during the subsistence of such fiducial and domestic relations, could not bar her right to the money confided to his custody on trust, and which he cannot be presumed to have held or claimed adversely in law, and admits that he never refunded.

But could the statute apply to such a case, to be made availing, it must have been pleaded; and this not having been done by the party, cannot be done for him by the court. And, surely, a court of equity would not unconscientiously apply such a bar in such a case, *sua sponte*, and against all precedent. Nor, under all the circumstances, could equity presume payment from the lapse of even twenty years, unless it had been relied on in the defense.

We therefore adjudge that the appellants are entitled, after deducting the widow's third for life, to one third of the land-money from the time it was paid or carried interest by the original contract of sale by the appellee, Oliver.

2. The $1,000, retained for the widow's dower in the land, greatly exceeded the value of her interest for life, and the circuit court, in the exercise of a sound judicial discretion, might either have estimated that value and decreed it absolutely to the appellees, or permitted them to retain one entire third of the consideration on the execution of an assured bond to refund it at her death. The court chose the latter alternative, and this is approved. But, one third of the whole price being less than $1,000, the appellants are entitled to their portion of the excess, whatever it may be, with interest from the time when the appellees received it.

3. We concur with the circuit court in the opinion also that Lucy and her offspring belonged to the infant children of the intestate Kirkpatrick, subject to their mother's dower therein. The testimony will not consistently allow any other deduction; and, as a legal consequence, the appellants are entitled to one third of the price for which they were sold, after deducting the widow's interest, and are also entitled to interest from the dates of the sales; and, after deducting the widow's interest and a proper allowance for the maintenance of infant slaves,

they are also entitled to one third of the balance, if any, of the reasonable hire for the whole time of service for the appellees. The statute of limitations, though pleaded as to this matter, certainly cannot avail.

4. In the like proportion the appellants are entitled to rent for the use of the land until the appellee sold it, and to interest thereon.

5. As $444 75 of the appraisement bill remain unaccounted for after deducting $500 as the appraised value of Lucy, and $410 80, the reported amount of the sales of a portion of the appraised articles, the appellants seem to be entitled to one third of that balance of $444 75, after deducting the widow's distributive portion thereof; for, in the absence of any account of the appraised articles retained by the administratrix, we are permitted to presume that they amounted in value to that balance of $444 75.

6. Although the testimony is apparently conflicting as to the value of the appellant Mary's board, yet there can be no doubt that, for twelve years immediately preceding her marriage, her habitual services in weaving, sewing, and cooking, and other domestic employments, for a large family, were worth at least as much as her board, even at the maximum estimate of any of the witnesses. And had she performed no service after she became twenty-one years old, the law would not imply a legal liability for board. We therefore adjudge that she is not chargeable with any thing for board during that period of twelve years; and the appellees are entitled to nothing for fiducial service.

As the foregoing conclusions are essentially inconsistent with the judgment of the circuit court, that judgment must be reversed. And, as the case is not now sufficiently prepared to enable the circuit court, at once, to render a satisfactory decree as to the value of the widow's dower in the land and slaves, or the time when the purchase money for the land became due, or the value of raising young slaves and of hire, or the disposition made of so much of the appraised property as has not been satisfactorily accounted for, in remanding the case, we will allow such proceedings, without delay, as may be neces-

sary to present those matters in a more definite and judicial shape.

Wherefore, the judgment is reversed, and the cause remanded for further proceedings and decree conformable with this opinion.